IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CARLOS LINDSEY,

                    Plaintiff,

      v.

DANE ESSER and MARY TAYLOR,

                    Defendants.

OPINION & ORDER

14-cv-357-jdp

The water in *pro se* prisoner Carlos Lindsey's cell was off for four days after one of his guards forgot to order that it be turned back on following a routine cell entry. Although plaintiff did not have in-cell drinking water, he received three meals every day, and each meal included a beverage. But without running water, plaintiff could not flush the toilet in his cell. Plaintiff had several opportunities to alert prison staff to the issue, and he does not explain why he waited four days to do so. When plaintiff eventually informed a guard that his cell did not have running water, the problem was fixed immediately. This case is about whether the temporary unsanitary conditions violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff filed a complaint under 42 U.S.C. § 1983. After screening the complaint, I granted plaintiff leave to proceed against defendants Dane Esser and Mary Taylor, two guards at plaintiff's prison. Dkt. 7. The material facts are not in dispute, and two facts are dispositive. First, plaintiff concedes that Taylor was not involved in the events of this case. Second, although a jury could find that the conditions in plaintiff's cell were objectively serious, plaintiff cannot show that Esser was deliberately indifferent to those conditions. Defendants are therefore entitled to summary judgment.

UNDISPUTED FACTS

Unless otherwise noted, the following facts are material and undisputed.

Since 2011, plaintiff has been incarcerated at the Wisconsin Secure Program Facility (WSPF), located in Boscobel, Wisconsin. Esser and Taylor are correctional officers at WSPF, and Esser was a lieutenant during the events in question.

On April 9, 2014, a guard noticed that plaintiff had more property in his cell than he was allowed to have.[1] Plaintiff refused to comply with staff directives to return the excess property, and Esser determined that a cell entry would be necessary. Esser instructed door control to shut off the water to plaintiff's cell. This was a safety measure, designed to prevent inmates from creating hazardous conditions for the cell entry team by putting water on the floors of their cells. The record is not clear what happened next, but Esser's declaration suggests that a team of guards actually entered plaintiff's cell. *See* Dkt. 32, ¶ 9. Regardless, the parties agree that after the incident, Esser never instructed central control to turn the water back on.

Over the next four days, plaintiff did not have running water in his cell. Both his sink and his toilet were inoperable. Access to drinking water was not a problem; plaintiff received three meals every day, and each meal included a beverage.[2] But according to plaintiff, he had to use the non-functioning toilet without being able to flush it. He was also unable to brush his teeth.

---

[1] Defendants contend that plaintiff had too much paper. Dkt. 30, ¶ 12. Plaintiff purports to "dispute" this fact, but he admits that he "was on paper property restriction." Dkt. 38, at 1. Any dispute on the point is immaterial to this case. What matters here is that Esser decided that WSPF personnel needed to enter plaintiff's cell.

[2] I denied plaintiff leave to proceed on an Eighth Amendment claim against defendants for depriving him of access to drinking water. Dkt. 5, at 3.

Plaintiff had several opportunities to alert prison staff to the problem, but he apparently chose not to do so. Every hour, a staff member was present in each housing unit at WSPF to perform a general wellness check. There were also other personnel who passed through the housing units during the day (*e.g.*, to distribute medication or to provide psychological services). And plaintiff had a pen, so he had the option of submitting an information request or an offender complaint to the institution complaint examiner (ICE). Finally, each cell at WSPF is equipped with an intercom that allows its occupant to contact prison staff. Plaintiff does not dispute that these options were available to him. Nor does he dispute that he failed to use any of these opportunities to alert WSPF staff to his problem until April 13, 2014, when he reported to Ms. Novinska (not a party to this suit) that his cell did not have running water. Ms. Novinska immediately contacted the officer at central control, who confirmed that plaintiff's water was indeed turned off. The officer promptly turned the water back on.

The following day, plaintiff submitted an offender complaint. His complaint stated that he informed several correctional officers about the lack of water in his cell, but that they ignored him. The ICE who reviewed plaintiff's complaint spoke to each of the correctional officers who plaintiff identified. All of them, except Ms. Novinska, denied that plaintiff ever told them about his cell not having water. The ICE therefore concluded that "[i]t does appear that the inmate was without water in his cell for several days. However, there is no evidence that he told any staff members prior to 4-13-14." Dkt. 33-1, at 5. Plaintiff appealed the determination all the way up to the secretary of the Department of Corrections, contending that Esser intentionally failed to have the water turned back on in plaintiff's cell. The ICE's initial findings were affirmed at every step of the review process.

3

Plaintiff filed a complaint in this court on May 16, 2014. Dkt. 1. I initially dismissed the complaint for failure to comply with Federal Rule of Civil Procedure 8, but I afforded plaintiff an opportunity to amend his complaint, which he did. Dkt. 6. After screening plaintiff's amended complaint, I granted him leave to proceed against defendants with a claim under the Eighth Amendment for the unsanitary conditions that his non-functioning toilet created. Dkt. 7. Both sides have moved for summary judgment.[3] I have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because plaintiff's claim arises under federal law.

ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). But if the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, then summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

---

[3] I will not separately address plaintiff's motion for summary judgment because the issues in that motion precisely mirror those in defendants' motion. Dkt. 19. I have, however, considered whether plaintiff presents factual information or legal arguments that preclude summary judgment for defendants. He does not. As discussed below, no reasonable jury could find in plaintiff's favor on the subjective component of his Eighth Amendment claim.

Plaintiff contends that the four-day deprivation of a functioning toilet caused unsanitary conditions of confinement, in violation of the Eighth Amendment. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious . . . a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (internal citations and quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (internal citations and quotation marks omitted). It would be plaintiff's burden to prove both of these elements at trial.

Plaintiff has a foundational problem with his claim against Taylor. "[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (internal citations and quotation marks omitted). In his amended complaint, plaintiff alleged that sometime after the cell entry on April 9, he told Taylor that the water was off in his cell and Taylor ignored him. Dkt. 6, at 1. But now, plaintiff's factual narrative has changed. To support their motion for summary judgment, defendants proposed several facts relating to Taylor's involvement. Among those proposed facts were:

1. "Lindsey never informed Taylor that he had no water in his cell. If he had, Taylor would have reported it to Central Door Control staff immediately so that water could be restored to his cell right away."

2. "Taylor had no personal involvement with regard to any of the allegations contained in the complaint pertaining to this action."

Dkt. 30, ¶¶ 22, 24. Plaintiff affirmatively indicated that he did not dispute either of these facts. Dkt. 38, at 2. As the preliminary pretrial conference order explained: "[u]nless the

responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed." Dkt. 15, at 6. Thus, plaintiff's responses to defendants' proposed findings of fact establish that Taylor is entitled to judgment as a matter of law because she was not personally involved in the events of this case.

With regard to the claim against Esser, defendants contend that plaintiff has not adduced evidence from which a jury could find in his favor on the objective or subjective components. I disagree that, as a matter of law, the conditions in plaintiff's cell were not objectively serious. But defendants are correct that plaintiff has no evidence that Esser was deliberately indifferent to his health or safety. Esser is therefore entitled to judgment as a matter of law.

## A. Sufficiently serious conditions

For the objective component of his Eighth Amendment claim, plaintiff identifies three results of not having water in his cell: (1) "I was forced to use the unsanitary dysfunctional restroom facility daily;" (2) "I was unable to conduct any oral hygiene and dental care;" and (3) "I had to suffer the odor arising from the unsanitary dysfunctional toilet daily." Dkt. 23. Plaintiff does not provide further details on how the conditions in his cell were so inadequate as to violate the Eighth Amendment. Moreover, some of what he describes—even considered in the aggregate—simply was not "sufficiently serious." For example, it is possible to brush your teeth without water (plaintiff does not allege that he was also deprived of a toothbrush or toothpaste). Some of the conditions in plaintiff's cell may have been inconvenient or unpleasant, but "[t]he Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons. Occasional discomfort is part of the

6

penalty that criminal offenders pay for their offenses against society." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (internal citations and quotation marks omitted).

The lack of a functioning toilet, however, is more significant. As this court held in *Flakes v. Percy*, "when the Eighth Amendment is operative, its ban is violated by locking a person, for any significant period of time, in a cell lacking a flush toilet and a washbowl." 511 F. Supp. 1325, 1332 (W.D. Wis. 1981); *see also Brown v. Ryker*, No. 10-cv-397, 2011 WL 221817, at *3 (S.D. Ill. Jan. 24, 2011) ("The plaintiff here describes ongoing exposure to his own and his cellmate's human waste in his cell for over four days, being subjected to the constant odor of urine and feces from his own cell and the entire housing unit, being unable to wash after using the toilet or before eating, and physical pain and discomfort from lack of access to a working toilet. These unsanitary and hazardous conditions meet the objective component of a constitutional violation."). Indeed, the Seventh Circuit has suggested that a functioning toilet is "among the minimal civilized measure of life's necessities . . . that must be afforded prisoners." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (internal citations and quotation marks omitted).[4]

Defendants do not acknowledge these cases, instead contending that "a temporary shutdown of in-cell plumbing does not amount to a constitutional violation, without a showing of other factors rendering the deprivation extreme." Dkt. 29, at 7. Defendants distinguish the comparatively modest conditions in plaintiff's cell from the more grotesque

---

[4] I note that other district courts in this circuit have held that the lack of a functioning toilet, without more, does not rise to the level of a constitutional deprivation. *See, e.g.*, *Ashley v. Mollenhauer*, No. 12-cv-468, 2013 WL 432907, at *3 (N.D. Ind. Jan. 31, 2013) ("The Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets at all times.") (citing *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992)); *Neal v. Clark*, 938 F. Supp. 484, 486 (N.D. Ill. 1996) (for 20 days, inmate had a toilet that did not empty when flushed). I will follow Seventh Circuit precedent and previous decisions from this court.

conditions in which the Seventh Circuit has allowed inmates to proceed with Eighth Amendment claims. For example, in *Johnson v. Pelker*, the Seventh Circuit held that the lack of running water in a segregation cell for three days was actionable because the plaintiff was unable to clean walls that were smeared with human feces. 891 F.2d 136, 137 (7th Cir. 1989). The plaintiff was also required to sleep on damp bedding and denied dry clothing after other inmates drenched him. *Id.* Likewise, in *Vinning-El v. Long*, the Seventh Circuit reversed summary judgment against a prisoner on his Eighth Amendment claim. 482 F.3d 923, 923 (7th Cir. 2007). There, the prisoner spent six days in a cell that "was covered with water, the sink and toilet did not work, and the walls were smeared with blood and feces. Vinning–El was forced to remain in the cell without a mattress, sheets, toilet paper, towels, shoes, soap, toothpaste, or any personal property." *Id.* at 924.

Plaintiff's case is certainly not as extreme as *Johnson* or as *Vinning-El*. And defendants are correct that a "temporary inconvenience [that] was not compounded by a deprivation of other necessities . . . does not approach unconstitutional proportions." *Johnson*, 891 F.2d at 138-39. Thus, a jury might decide that the conditions in plaintiff's cell did not rise to the level of being constitutionally inadequate. But a jury could also view the evidence of record and arrive at the opposite result. I cannot conclude, as a matter of law, that the four-day lack of a functioning toilet is insufficient to trigger Eighth Amendment protections.

## B.  Deliberate indifference

Although a jury could find in plaintiff's favor on the objective component of his claim, Esser is nevertheless entitled to summary judgment because plaintiff has not adduced evidence that Esser was deliberately indifferent to the conditions in plaintiff's cell. The requirement of deliberately indifferent conduct "follows from the principle that only the

unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834 (internal citations and quotation marks omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Here, no reasonable jury could conclude that Esser knew of and disregarded the conditions in plaintiff's cell.

It is undisputed that Esser ordered central control to turn off the water in plaintiff's cell so that a team of guards could enter. But Esser's affidavit explains that he nevertheless "was not aware that Mr. Lindsey's water was not turned back on immediately after the cell entry." Dkt. 32, ¶ 10. I understand defendants to argue that this was oversight on Esser's part (as opposed to someone at central control failing to document and carry out an order that Esser, in fact, gave). Plaintiff disagrees. His theory of this case is that Esser gave the order to shut the water off, and so he should have known that it was never turned back on.[5] But the problem with plaintiff's theory is that "deliberate indifference requires that the corrections officer must have *actual* knowledge of the risk." *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007) (original emphasis) (internal citations and quotation marks omitted). "It is not enough that a reasonable prison official would or should have known that the prisoner was at risk: the official must actually know of and disregard the risk to incur culpability." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).

---

[5] In his initial complaint, plaintiff alleged that he and Esser were "not on good turn [sic] with one another." Dkt. 1, at 7. I dismissed plaintiff's initial complaint in its entirety for failure to comply with Rule 8. Dkt. 5. Plaintiff's amended complaint, Dkt. 6, which is the operative pleading in this case, does not allege that Esser had a motive for failing to reactivate plaintiff's water. And even if there had been allegations of a motive in the amended complaint, plaintiff has not identified any evidence that would support such allegations.

9

Plaintiff has not adduced evidence from which a jury could conclude that Esser actually knew about the lack of running water. Nor does plaintiff contend that another staff member knew about the problem and Esser prevented that person from fixing it. Indeed, until the conversation with Ms. Novinska on April 13, plaintiff never told anyone that his water was off. There is no evidence in the record suggesting that Esser blocked plaintiff's attempts to alert WSPF staff to the problem, or otherwise contradicting Esser's sworn statement that he was not aware of plaintiff's lack of water.

Moreover, this case does not present circumstances under which "a risk might be so obvious that actual knowledge on the part of prison officials may be inferred." *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 519 (7th Cir. 2002). Other than a full toilet bowl, plaintiff does not allege that his cell had visible signs of his non-functioning plumbing. He does not have evidence that WSPF staff members observed him unsuccessfully try to use his sink or toilet. Thus, unless plaintiff spoke up, passing guards could have been oblivious to the problem. *Cf. Vinning-El*, 482 F.3d at 925 ("[A] floor covered with water, a broken toilet, feces and blood smeared along the wall, and no mattress to sleep on—a reasonable jury could infer that prison guards working in the vicinity necessarily would have known about the condition of the segregation cells."). And with regard to the toilet, plaintiff does not contend or have evidence that someone passing his cell would have been able to see the accumulated waste. Finally, even if a guard could have noticed the conditions in plaintiff's cell, there is simply no evidence that *Esser* knew about the problem. Because Esser is the defendant in this case, it is his deliberate indifference that is at issue.

I will assume that plaintiff is correct that Esser *should* have known about the problem. But that would make Esser's conduct in this case negligent, not deliberately indifferent. And

"[m]ere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Because plaintiff has not alleged or adduced evidence of anything more than negligence, a jury could not find that Esser was deliberately indifferent to the conditions in plaintiff's cell. Summary judgment is therefore appropriate.

ORDER

IT IS ORDERED that:

1. Plaintiff Carlos Lindsey's motion for summary judgment, Dkt. 19, is DENIED.

2. Defendants Dane Esser and Mary Taylor's motion for summary judgment, Dkt. 28, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered August 25, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

11